## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOHN DOE,

       *Plaintiff,*

   v.

SYRACUSE UNIVERSITY,

       *Defendant.*

Civil Action No.: 5:22-cv-00644-TJM-TWD

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SYRACUSE UNIVERSITY'S MOTION TO DISMISS</u>

**NESENOFF & MILTENBERG, LLP**
***Attorneys for Plaintiff John Doe***
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Tara J. Davis, Esq.
Nicholas E. Lewis, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

## TABLE OF CONTENTS\

UNITED STATES DISTRICT COURT ............................................................................ 1

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT .................................................................................................................. 4

   I.    LEGAL STANDARD ........................................................................................... 4

   II.    PLAINTIFF ADEQUATELY ALLEGES A TITLE IX ERRONEOUS
OUTCOME CLAIM ...................................................................................................... 6

     A.   Plaintiff Pleads Sufficient Facts to Cast an Articulable Doubt on the Accuracy of
the Proceedings. ............................................................................................................ 7

     B.   Plaintiff Pleads Sufficient Facts to Allege a Causal Relationship Between Gender
Bias and the Erroneous Outcome .................................................................................. 8

       i.  *Public Pressure is Not a Necessary Element of Gender Bias* ...................................... 13

       ii.  *There is No Strict Contemporaneousness Requirement for Public Pressure
Allegations* .................................................................................................................. 17

   III.    PLAINTIFF ADEQUATELY ALLEGES A TITLE IX SELECTIVE
ENFORCEMENT CLAIM ........................................................................................... 18

   IV.    PLAINTIFF ADEQUATELY ALLEGES BREACH OF CONTRACT ................. 21

CONCLUSION ............................................................................................................. 24

## **TABLE OF AUTHORITIES**

### **Cases**

*Ansari v. New York Univ.,*
   No. 96-CIV. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997) ............................... 23

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010) ...................................................................................... 5

*Ashcroft v. Iqbal,*
   556 U.S. 662, 663 (2009) .......................................................................................... 4

*Collick v. William Paterson University,*
   2016 WL 6824374 (N.D.N.Y. Feb 24, 2016) ........................................................ 11

*Conley v. Gibson,*
   355 U.S. 41 (1957) ..................................................................................................... 5

*Doe v. Amherst Coll.,*
   238 F.Supp.3d 195 (D. Mass. 2017) ................................................................. 11, 19

*Doe v. Baum,*
   903 F.3d 575 (6th Cir. 2018) ..................................................................................... 9

*Doe v. Brown Univ.,*
   327 F. Supp. 3d 397 (D.R.I. 2018) ......................................................................... 19

*Doe v. Case Western Reserve U.,*
   2017 WL 3840418 (N.D. Ohio September 1, 2017) ............................................... 14

*Doe v. George Washington Univ.,*
   366 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................... 12

*Doe v. Haas*
   427 F.Supp.3d 336 (E.D.N.Y. 2019) ...................................................................... 20

*Doe v. Lynn Univ., Inc.,*
   235 F.Supp.3d 1336 (S.D. Fla. 2017) ..................................................................... 11

*Doe v. Purdue Univ.,*
   928 F.3d 652 (7th Cir. 2019) .................................................................................. 23

*Doe v. Rollins Coll.,*
  352 F. Supp. 3d 1205 (M.D. Fla. 2019) ........................................................ 11, 18, 19

*Doe v. Sarah Lawrence Coll.,*
  453 F. Supp. 3d 653 (S.D.N.Y. 2020) ..................................................................... 23

*Doe v. Syracuse Univ.,*
  341 F. Supp. 3d 125 (N.D.N.Y. 2018) ............................................................... 16, 23

*Doe v. Syracuse Univ.,*
  Docket No. 18-CV-377, 2019 WL 2021026 (N.D.N.Y. May 8, 2019) ..................... 23

*Doe v. Trs. Univ. Pennsylvania,*
  270 F. Supp. 3d 799 (E.D. Pa. 2017) ..................................................................... 15

*Doe v. Union College,*
  1:19 CV-284 (GLS/CFH), 2020 WL 1063063 (N.D.N.Y. Mar. 5, 2020) ................. 23

*Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado,*
  255 F. Supp. 3d 1064 (D. Colo. 2017) .................................................................... 13

*Doe v. Univ. of Sciences,*
  961 F.3d 203 (3d Cir. 2020) ........................................................................... 19, 20

*Doe v. Washington & Lee Univ.,*
  No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ........................... 11

*Gischel v. Univ. of Cincinnati,*
  2018 WL 9944971 (S.D. Ohio June 26, 2018) ....................................................... 20

*In re Demas,*
  150 B.R. 323 (Bankr. S.D.N.Y. 1993) ..................................................................... 5

*Lincoln Ben. Life Co. v. AEI Life, LLC,*
  800 F.3d 99 (3d Cir. 2015) ...................................................................................... 6

McDonnell Douglas Corp v. Green,
  411 U.S. 792 (1973) ................................................................................................ 9

*Menaker v. Hofstra University,*
  935 F.3d, 2019 WL 3819631 ....................................................... 5, 9, 10, 11, 13, 17

*Neal v. Colorado State Univ.-Pueblo,*
 No. 16-CV-873 (RM) (CBS), 2017 WL 633045 (D. Colo. Feb. 16, 2017) ............................ 11

*Noakes v. Syracuse Univ.,*
 369 F. Supp. 3d 397 (N.D.N.Y. 2019) ............................................................................. 10, 11

*Norris v. Univ. of Colorado, Boulder,*
 362 F. Supp. 3d 1001 (D. Colo. 2019) ................................................................................. 15

*Novio v. New York Acad. of Art,*
 317 F. Supp. 3d 803 (S.D.N.Y. 2018) .................................................................................. 23

*Papaspiridakos v. Educ. Affiliates Inc.,*
 2013 WL 4899136 (E.D.N.Y Sept. 11, 2013) ....................................................................... 21

*Papelino v. Albany College of Pharm. of Union Univ.,*
 633 F.3d 81 (2d Cir. 2011) .......................................................................................... 21, 23, 24

*Phillips v. Cty. of Allegheny,*
 515 F.3d 224 (3d Cir. 2008) .................................................................................................... 4

*Prasad v Cornell Univ.,*
 Docket No. 15-CV-322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ...................... 10, 15, 16

*ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.,*
 652 F. Supp. 2d 552 (D.N.J. 2009) .......................................................................................... 4

*Rolph v. Hobart & William Smith Colleges,*
 271 F. Supp. 3d 386 (W.D.N.Y. 2017) .................................................................................. 15

*Scheuer v. Rhodes,*
 416 U.S. 232 (1974) ................................................................................................................. 5

*Wells v. Xavier Univ.,*
 7 F.Supp.3d 746 (S.D. Ohio 2014) ........................................................................................ 12

*Wood v. Lucy, Lady Duff-Gordon,*
 222 N.Y. 88 (1917) ................................................................................................................. 21

*Yusuf v. Vassar Coll.,*
 35 F.3d 709 (2d Cir. 1994) ........................................................................................... 6, 13, 16

**<u>Statutes</u>**

20 U.S.C § 1681 ................................................................................................................... 1, 6

**<u>Rules</u>**

Fed. R. Civ. P. 8 ...................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 4, 5, 9, 13, 17

## PRELIMINARY STATEMENT

Plaintiff John Doe ("Plaintiff" or "Doe"), a former student at Syracuse University ("Defendant" or "Syracuse" or the "University"), hereby opposes Defendant Syracuse University's Motion to Dismiss (the "Motion") Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 20). The allegations in the Complaint, taken as true and viewed in the light most favorable to Plaintiff, as they must be at this stage, are sufficient to state claims under Title IX of the Education Amendments of 1972 (20 U.S.C § 1681 *et seq.*), as well as state law contract claims. Defendant's motion should be denied.

## STATEMENT OF FACTS

The complete facts underlying this action are set forth fully in the Complaint (ECF No. 1), incorporated herein by reference.[1] For the Court's convenience, a summary of the relevant facts follows.

John Doe began pledging a pre-law fraternity at Syracuse in March of 2021. Compl. ¶¶ 84-85. As part of the pledging process, pledges were to reach out to eight older members of the fraternity to meet and establish a mentor-mentee relationship. *Id.* Accordingly, Plaintiff obtained the phone number of Jane Roe—a leader in the fraternity—from a pamphlet issued to the pledges and sent her a text message on March 15, 2021, asking to meet for coffee. Compl. ¶ 87. Plaintiff and Roe texted consistently prior to meeting in order to get to know each other. Compl. ¶ 89. Plaintiff and Roe discussed how they previously met briefly at a social gathering that semester,

---

[1] Defendant attempts to incorporate the Hearing Officer's decision letter in order to dispute the facts alleged in Plaintiff's Complaint. This is inappropriate at this stage in the litigation. The facts in Plaintiff's Complaint must be taken as true. Incorporation of outside documents in an effort to dispute the facts converts Defendant's motion to dismiss into one for summary judgment. *Solera Const. Co. v. Benson Indus.*, 243 F.R.D. 113, 113 (S.D.N.Y. 2007); *Lamda Sols. Corp. v. HSBC Bank USA*, N.A., 574 F. Supp. 3d 205, 212 (S.D.N.Y. 2021).

although Roe stated that she did not remember because due to an alleged "black out." Compl. ¶¶ 91. On March 19, 2021, Roe sent Plaintiff a text message from a party, asking if Plaintiff had any alcohol. Compl. ¶ 93. Plaintiff then went to meet Roe at the party, and the two briefly spent time together talking. *Id*.

On March 20, 2021, Roe and Plaintiff planned to spend time exploring their mentor-mentee relationship at another party that night. Compl. ¶ 95. When Roe arrived at the party, she immediately went to meet Plaintiff, where they sat on a couch together and engaged in casual conversation. Compl. ¶ 98. Roe and Plaintiff then mutually decided to go to a room upstairs to continue their conversation. Compl. ¶ 99. While in the upstairs room, Roe told Plaintiff that she really wanted to be Plaintiff's mentor, and she began to place her hand on Plaintiff and caress his leg. Compl. ¶¶ 100-101. A few minutes later, at approximately 1:20 a.m., four students entered the room for a few minutes to drink alcohol. Compl. ¶ 102. Before leaving, one of the students that saw Roe's affection towards Plaintiff, told Plaintiff that he should lock the door. Compl. ¶ 103. Plaintiff and Roe began to mutually kiss and then engaged in consensual sexual intercourse. Compl. ¶¶ 106-113. Roe did not display any visible signs of incapacitation throughout the encounter, but rather, was an active and willing participant. *Id*. Later in the night, Roe was found sleeping in the room upstairs. Compl. ¶ 116. Plaintiff then walked Roe home. Roe texted Plaintiff apologizing and asking Plaintiff if he was okay. Compl. ¶¶ 116-118. Roe then called Plaintiff and said that she still really wanted to be Plaintiff's mentor. Compl. ¶ 119.

The next day, Plaintiff and Roe spoke via Facetime regarding their encounter, and Roe stated that everything was fine, and reiterated that she wanted to be Plaintiff's mentor. Compl. ¶ 120. Later in the day, however, Roe called Doe, completely switching her story, claiming that she was uncomfortable with the encounter, and said that she wanted space. Compl. ¶ 122. That night,

Plaintiff received a phone call from the president of the pre-law fraternity, stating that based upon Roe's allegations of sexual assault, that Doe was no longer welcome as part of the fraternity. Compl. ¶¶ 124-125. Roe then embarked on a smear campaign against Doe, falsely informing other members of the fraternity that she had allegedly been violently raped by Plaintiff. Compl. ¶ 126.

On April 22, 2021, nearly one month later, Plaintiff received a Notice of Investigation, identifying Roe's claims of sexual assault against him. Compl. ¶ 131. Plaintiff felt that Roe had taken extreme advantage of him and that he had no choice but to give in to her sexual advances due to her status as a leader and more senior member of the fraternity. Compl. ¶ 132. Accordingly, Plaintiff filed a formal complaint of sexual assault against Roe. *Id*. The University then began an investigation where Roe and her witnesses gave statements that were fraught with inconsistencies, and were even expressly disproven by video surveillance footage, raising significant credibility concerns. Compl. ¶¶ 139-144. When the University released the preliminary investigation report, Plaintiff requested that the investigator ask Roe a number of follow-up questions to highlight her inconsistencies. Compl. ¶¶ 145-146. The investigator, however, failed to ask Roe the requested follow-up questions, yet asked Plaintiff almost all of Roe's requested follow up questions. Compl. ¶ 148.

The University held a hearing on October 26, 27, and 28, 2021. Compl. ¶ 153. Despite Doe and Roe both being complainants and respondents, the Hearing Officer grilled Plaintiff with questions that amounted to unveiled victim blaming, while Roe was met with short, trauma-informed questioning. Compl. ¶¶ 154-157. The Hearing Officer issued the decision letter on November 29, 2021, which dismissed Roe's numerous inconsistencies and credibility issues in order to find Plaintiff responsible. Compl. ¶¶ 158-169. As a result, Syracuse expelled Plaintiff from the University. Compl. ¶¶ 170. Doe timely appealed the decision and sanction, but his appeal

was restricted to ten pages, and thus was severely limited in scope. Compl. ¶¶ 171-172. Syracuse denied Doe's appeal on all grounds, and as such, Plaintiff has exhausted all possible avenues of appeal under the University's policies. Compl. ¶¶ 173-174. As a result, Plaintiff Doe has suffered, and will continue to suffer, tremendous reputational, educational, and career damages as a result of Defendant's unlawful actions. Compl. ¶¶ 175-181.

## **ARGUMENT**

### I.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires only that a Complaint contain a "plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim." *ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 555 (D.N.J. 2009). Rather, a complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). Notice-pleading under the Federal Rules "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

A plaintiff "is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) (citing Fed. R. Civ. P. 8(d)(3)). "On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be

considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor . . . ." *Ibid.*

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he moving party has the burden of proving that no claim is stated" and the reviewing court "should deny a motion under Rule 12(b)(6) unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Demas*, 150 B.R. 323, 327 (Bankr. S.D.N.Y. 1993) (emphasis added) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). As the Second Circuit has cautioned, district courts must not engage in substantive fact-finding on a Rule 12 motion. *Menaker*, 935 F.3d at 35 (reversing dismissal where district court "failed to draw all reasonable inferences in [Plaintiff]'s favor and made improper findings of fact."). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is 'very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Even if "the facts a plaintiff alleges in a complaint may turn out to be self-serving and untrue," a court at the motion-to-dismiss stage "is not engaged in an effort to determine the true facts." *Doe v. Columbia Univ.*, 831 F.3d at 48. "If the complaint is found sufficient to state a legal claim, the opposing party will then have ample opportunity to contest the truth of the plaintiff's allegations and to offer its own version" through discovery. *Ibid.*

Moreover, the *Twombly* pleading standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations and quotations omitted). Thus, the mandatory presumption of truth and the beneficial inference in favor of the Plaintiff apply not only to facts based on direct personal knowledge, but

also those alleged on "information and belief." *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (denying motion to dismiss and noting that the Ninth, Seventh, and Second Circuit all presume truth of "information and belief" allegations).

## II. PLAINTIFF ADEQUATELY ALLEGES A TITLE IX ERRONEOUS OUTCOME CLAIM

Plaintiff sufficiently alleges a claim for erroneous outcome under Title IX of the Education Amendments of 1972.[2] Syracuse's Motion ignores relevant substantive allegations in the Complaint and unsuccessfully attempts to distinguish the instant case from precedent that is squarely on point. Syracuse's Motion to Dismiss Plaintiff's Title IX claim should be denied.

Title IX states, in relevant part: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Title IX bars the imposition of university discipline where gender is a motivating factor." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). Under Second Circuit law, one of several theories plaintiffs may pursue to prove a Title IX violation is called "erroneous outcome." *Ibid.*

> Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. . . . [T]he pleading burden in this regard is not heavy. . . . A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. . . . Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or

---

[2] As acknowledged by Defendant, as claims brought under the New York Human Rights Law are analyzed under an identical standard to Title IX claims, Defendant's Motion to Dismiss Plaintiff's claim under the NYSHRL should similarly be denied.

patterns of decision-making that also tend to show the influence of gender.

*Ibid.* Further:

> The Second Circuit has established what it describes as a "***low standard***" for pleading the existence of gender bias in Title IX cases. . . . Specifically, procedural irregularities or preferential treatment during the disciplinary proceeding, combined with a concrete motive to discriminate on the basis of gender, is sufficient to create at least a "minimal inference" that a student was subjected to gender bias.

*Feibleman v. Trustees of Columbia Univ. in City of New York*, Docket No. 19-CV-4327 (VEC), 2020 WL 882429, at *9 (S.D.N.Y. Feb. 24, 2020) (emphasis added) (citations omitted). Plaintiff pleads sufficient facts to meet both prongs of the erroneous outcome theory.

### A. Plaintiff Pleads Sufficient Facts to Cast an Articulable Doubt on the Accuracy of the Proceedings.

Contrary to Defendant's bald assertions, Plaintiff sufficiently pleads facts that cast an articulable doubt on the accuracy of the proceedings, satisfying the first prong of an erroneous outcome claim. As courts routinely recognize, a plaintiff may cast articulable doubt on the outcome of a university sexual misconduct proceeding numerous ways, including but not limited to: pointing to procedural flaws in the investigatory and adjudicative process; noting inconsistencies or errors in the adjudicator's oral or written findings; or challenging the overall sufficiency and reliability of the evidence. *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018); *Yusuf v. Vassar Coll,*, 35 F.3d at 715.

Defendant largely claims that Plaintiff's *only* alleged procedural flaw was that he disagreed with the weight given to certain evidence. It is clear, however, that Plaintiff sets forth a myriad of both procedural and substantive flaws which cast doubt on the accuracy of Syracuse's finding him responsible for sexual assault. Indeed, the Complaint alleges, among other things: (i) Syracuse ignored exculpatory evidence demonstrating that Roe gave competent affirmative consent to the

7

sexual encounter; (ii) Syracuse ignored and minimized the testimony of the four students, and the *only* firsthand witnesses immediately prior to the encounter, which established that Roe did not show any signs of incapacitation immediately prior to the encounter; (iii) the hearing officer, while discrediting the testimony of witnesses who were present, relied heavily on the testimony of Roe's witnesses who were not present for the encounter and merely restated the story Roe told them; (iv) The Hearing Officer credited Roe's witnesses as to Roe's incapacitation despite clear video evidence contradicting their testimonies; (v) the Hearing Officer made a decision against the weight of the evidence and not supported by a preponderance of the evidence; and (vi) Plaintiff did not have an adequate opportunity to appeal all of the procedural inadequacies, as Plaintiff's appeal was limited to a mere ten pages. Compl. ¶¶ 140-144, 159-166, 221.

Plaintiff therefore adequately sets forth: (i) "particular procedural flaws," including Syracuse's failure to properly investigate Roe's claims; and (ii) "particular evidentiary weaknesses," such as Roe's numerous inconsistent statements in a case that turned entirely on credibility. *See Yusuf.*, 35 F.3d at 715. Collectively, this litany of errors sufficiently casts doubt on the accuracy of the proceedings.

### B. Plaintiff Pleads Sufficient Facts to Allege a Causal Relationship Between Gender Bias and the Erroneous Outcome

Plaintiff meets the second prong of the erroneous outcome test, alleging sufficient facts to make a plausible claim that Defendant's actions were motivated by gender bias. Specifically, he alleges preferential treatment to the female students during both the investigation and the adjudication, skewing of the Investigation Report in Roe's favor, reliance on gender stereotypes in the ultimate responsibility determination, and pressure placed on the University by both the federal government and its own student body to aggressively respond to allegations of sexual

8

misconduct against males and better protect women on campus. Taken together, these claims meet

the standard for alleging minimal plausible evidence of gender bias to survive a motion to dismiss.

The Second Circuit held that Title IX cases are subject to the *McDonnell Douglas*[3] burden-

shifting framework: to wit, "[b]ecause it is often difficult to obtain direct evidence of

discriminatory intent," plaintiffs in Title IX cases need only plead facts that support a *minimal*

*plausible inference* of gender discrimination. *Menaker*, 935 F.3d at 30 (citing *Columbia*, 831 F.3d

at 56). "*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded

facts be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference

of discriminatory intent is plausible." *Columbia*, 831 F.3d at 57. In that regard, "alternative

explanations [for the University's findings] are not fatal to [Plaintiff]'s ability to survive a Rule

12(b)(6) motion." *Doe v. Baum*, 903 F.3d 575, 587 (6th Cir. 2018). *See also Feibleman*, 2020

WL 882429 at *14-15 (reasoning that, while the school's proffered gender-neutral explanations

seemed "highly plausible—and perhaps the most plausible," and that plaintiff's gender bias claims

were "remotely" and "barely" plausible, the mandate on a Rule 12 motion to view all inferences

in the light most favorable to plaintiff, and not to make credibility determinations, required the

court to uphold Plaintiff's Title IX claim and deny defendant's motion to dismiss).

First, Plaintiff Doe set forth a pattern of decision-making, based upon Syracuse's prior

conduct and, based on this information, upon information and belief, that "Syracuse has engaged

in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed

upon male students, while not making comparable efforts with respect to allegations of sexual

violence and abusive conduct made against female/non-male students."[4] Compl. ¶ 228. Second,

---

[3] *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973).
[4] Statistical information on Syracuse's adjudication of sexual misconduct complaints is exclusively within Syracuse's control, thus, Plaintiff's "information and belief" allegation is appropriate and

Plaintiff alleges that Syracuse was motivated by both external and internal pressure, as well as financial interest, to invariably find male students responsible in order to "overcorrect" a history of failing to sufficiently respond to allegations of sexual misconduct against males. Namely, Plaintiff alleges that Syracuse had two lawsuits pending against it at the time of the investigation for its failure to conduct a proper investigation into complaints of sexual misconduct. Compl. ¶¶ 199. As a result, Syracuse sought to avoid further negative publicity for its failure to adequately respond by employing an aggressive approach to find responsible males accused of sexual misconduct. Compl. ¶¶ 201-204, 210.

Taken together, these allegations are more than sufficient to meet the "low standard" for pleading gender bias in this Circuit. *See Columbia*, 831 F.3d at 57; *Menaker*, 935 F.3d at 33; *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 416 (N.D.N.Y. 2019); *Prasad v Cornell Univ.*, Docket No. 15-CV-322, 2016 WL 3212079, at *16-17 (N.D.N.Y. Feb. 24, 2016); *Feibleman*, 2020 WL 882429 at *14-15.

These precise types of allegations have been held sufficient to preclude dismissal under Rule 12. As the Second Circuit recently made abundantly clear:

> [W]hen combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even *minimal* evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination. . . . [W]here a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to

---

entitled to consideration. *See, e.g., Lincoln*, 800 F.3d at 107 n.31; *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 769 (D. Md. 2015) (denying motion to dismiss student's Title IX claim on "information and belief" claims); *Ritter v. Oklahoma City Univ.*, No. CIV-16-0438-HE, 2016 WL 3982554, at *2 (W.D. Okla. July 22, 2016) (permitting plaintiff's "information and belief" allegation that "females facing comparable disciplinary charges have been treated more favorably than plaintiff").

> allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a *prima facie* case of sex discrimination.

*Menaker*, 2019 WL 3819631, at *8.  *See also, e.g., Columbia*, 831 F.3d at 57 ("[I]t is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault."); *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018) (allegations "showing a potential pattern of gender-based decision-making"); *Collick*, 2016 WL 6824374, at *12 ("[I]t is no more than a commonsense inference that the public's and the policymakers' attention to the issue of campus sexual assault may have caused a university to believe it was in the spotlight."); *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 416 (N.D.N.Y. 2019) ("[A] reasonable inference could be drawn that the Investigator, the University Conduct Board, the Appeals Board, and other University officials were motivated to appease OCR by siding with Roe . . .."); *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1210–11 (M.D. Fla. 2019) (investigation "amidst a clamor of public and campus scrutiny over its treatment of sexual assault complaints by female students" created "circumstantial evidence of bias"); *Doe v. Amherst Coll.*, 238 F.Supp.3d 195, 223 (D. Mass. 2017) (allegations that university was trying to "appease" a biased, student-led movement); *Doe v. Lynn Univ., Inc.*, 235 F.Supp.3d 1336, 1340–42 (S.D. Fla. 2017) (allegations that university reacted to "pressure from the public and the parents of female students" to punish males); *Neal v. Colorado State Univ.-Pueblo*, No. 16-CV-873 (RM) (CBS), 2017 WL 633045, at *14 (D. Colo. Feb. 16, 2017) (allegations of "gender-skewed implementation of the 2011 DCL, pressure to avoid DOE investigation and loss of federal funding, procedural shortcomings," and Title IX employee bias); *Doe v. Washington & Lee Univ.*, No. 14-CV-00052, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015) (allegations that

university's disciplinary procedures amount to "a practice of railroading accused students," combined with pressure from the OCR and involvement of potentially biased employee in disciplinary process); *Wells v. Xavier Univ.*, 7 F.Supp.3d 746, 751 (S.D. Ohio 2014) (allegations suggested that university was "reacting against him[ ] as a male" in response to a Department of Education investigation).

Indeed, in *Doe v. George Washington Univ.*, 366 F. Supp. 3d 1 (D.D.C. 2018), the court found it particularly persuasive that, in response to OCR investigations and student demonstrations claiming an inadequate response to sexual misconduct, the University issued a public statement providing its strong statistics of convictions and punishments meted out to Title IX respondents. The court found that the school's reaction "demonstrated a concrete link between public criticism of its Title IX enforcement regime and the results of individual Title IX cases." *Id.* at 12–13. Plaintiff makes the same connection here: in direct response to a massive student uproar over Syracuse's historical mishandling of sexual assault claims, Defendant in response was prompted to "operate[] with a gender bias against [males] in order to appear 'tough' on sexual assault." Compl. ¶ 204.

Defendant Syracuse focuses the bulk of its argument on the allegations concerning public pressure on Syracuse to favor female accusers over male respondents. Syracuse asserts that the public pressure alleged in the Complaint is too remote in time to be relevant to Plaintiff's disciplinary proceedings. This argument is unavailing for two reasons: first, public pressure is not even a necessary element of a gender bias claim, which Plaintiff amply makes out with the other evidence cited in the Complaint. Second, there is no strict contemporaneousness requirement when considering public pressure.

### i.   Public Pressure is Not a Necessary Element of Gender Bias

While the Second Circuit has made it clear that allegations of pressure on a University to favor one sex over the other in order to avoid public criticism can be *sufficient*, when combined with an improper process, to make out a gender bias claim, such pressure is not *necessary* to do so. Plaintiff's Complaint here is sufficient to allege gender bias even without the very significant public pressure allegations.

While allegations of pressure on a university to aggressively prosecute males and protect women on campus have been repeatedly found sufficient to make a claim of gender bias "plausible" for purposes of surviving a Rule 12(b)(6) motion,[5] such pressure is not the sole and exclusive way to successfully allege gender bias.  As set forth in *Yusuf*, a plaintiff may also show gender bias by alleging "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715.

Further, Title IX enforcement officials "often must make a credibility judgment between a male and female, which doubles the possibility of gender-specific stereotypes influencing the investigation (*e.g.* 'a woman would never falsely accuse anyone of that,' 'men always behave opportunistically towards drunk girls')." *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1076 (D. Colo. 2017). "[C]redibility determinations as between a male and a female may be the most likely circumstances in which gender bias, explicit or implicit, will have an effect." *Id.* In *Doe v. Baum*, the Sixth Circuit held that a hearing board's crediting of exclusively female testimony and rejecting all male testimony gave rise to a plausible

---

[5] *See Menaker*, 935 F.3d at 33 ("[E]ven minimal evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination.").

inference of gender bias. *Baum*, 903 F.3d at 586. *See Doe v. Case Western Reserve U.*, 2017 WL 3840418 at **6-7 (N.D. Ohio September 1, 2017) (accepting complainant's allegations at face value, notwithstanding inconsistent statements and contradictory evidence, supported allegation of gender bias); *Marymount Univ.*, 297 F. Supp. 3d at 586-587 (adjudicator's failure to consider evidence that refuted complainant's allegations—specifically that she acted "happy" and "giddy" after alleged incident—and crediting of complainant's implausible allegations supported allegation of gender bias).

Here, the investigator's credibility determination in favor of Roe and her witnesses raise a plausible inference of gender bias. Plaintiff specifically alleges that: (i) even though both Doe and Roe were both complainants and respondents, Syracuse pursued Roe's allegations against Plaintiff aggressively, while simultaneously brushing Doe's complaint against Roe to the side; (ii) as a result of Doe's counter-complaint against Roe, Plaintiff was grilled with victim-shaming questions at the hearing, questioning his ability to "escape" and whether he was erect during the alleged incident, while Roe was met with questioning that was formulated so as to be gentle and not purportedly "re-traumatize" her; (iii) the investigator prioritized and gave undue weight to Roe and her female witnesses, finding them credible despite serious inconsistencies; and (iv) the hearing officer ignored significant credibility concerns and contradictory evidence in order to find her credible, and by contrast, Doe's words were twisted and taken out of context in order to paint him as responsible.

These types of allegations, particularly when combined with allegations of institutional bias, have routinely been held up by courts as sufficient to overcome a motion to dismiss. *See, e.g.*, *Baum*, 903 F.3d at 586–87 (A "specific allegation of adjudicator bias, combined with the external pressure facing the university, makes Doe's claim plausible."); *Marymount Univ.*, 297 F.

Supp. 3d at 579 ("[I]nvestigators included entries from Roe's journal despite the fact there was no effort made to authenticate these entries," "the investigative team[] refus[ed] to make any effort . . . to obtain evidence that would refute allegations made by Roe," and the school "refus[ed] to provide Doe unfettered access to the final investigative report."); *Norris v. Univ. of Colorado, Boulder*, 362 F. Supp. 3d 1001, 1012 (D. Colo. 2019) ("[T]he allegations regarding Plaintiff's access to the investigative file, the alleged inconsistencies in the Investigators' findings, the process of the administrative review, combined with the issues of public pressure, provide at least some relevant information to make the [gender bias] claims plausible on their face."); *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 401 (W.D.N.Y. 2017) ("allegations concerning the procedural defects" along with "allegations concerning the public criticism" gave "ample plausible support" to gender bias); *Doe v. Trs. Univ. Pennsylvania*, 270 F. Supp. 3d 799, 823–24 (E.D. Pa. 2017) (allegations regarding "training materials and possible pro-complainant bias on the part of University officials," in addition to "criticism [defendant] has received in the past for not taking the complaints of female students sufficiently seriously").

In *Prasad v. Cornell University*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016), the Court denied Cornell's motion to dismiss the male student's Title IX claim for erroneous outcome, and found that the plaintiff had sufficiently alleged gender bias in large part due to the allegations of a biased and one-sided investigation and adjudication process that consistently, inexplicably favored the female student:

> Plaintiff presents facts plausibly suggesting that considerations of his gender motivated Cornell's actions in his disciplinary proceeding. This includes facts indicating the differential treatment Plaintiff and Doe received during the adjudicatory process, an Investigative Report that misconstrued and slanted the evidence against Plaintiff, a drastic turnaround in one investigator's position during the final weeks of the investigation, and the allegation that a gender stereotype adverse to males charged with sexual assaults

existed at Cornell causing such disciplinary proceedings to "invariably" end adversely to male respondents. Cornell argues that this last assertion is unsupported by any factual averment and, therefore, must be rejected. . . .

[U]nlike in *Doe v. Columbia* where a similar "invariable treatment" allegation was rejected as "wholly conclusory," ***Plaintiff alleges that anti-male bias was exhibited by the differential treatment he and Doe received during the administrative process, by the one-sided manner that the investigation was conducted, and by the outcome determinative style that the Investigative Report was drafted***. . . .

Given the totality of the circumstances, including that Jane Doe was treated more favorably than Plaintiff, that the investigators seemingly slanted the Investigative Report against Plaintiff, a drastic change in position of one investigator in the closing weeks of the investigation, and the *possibility* that male respondents in sexual assault cases are invariably found guilty at Cornell, Plaintiff plausibly establishes a causal connection between gender bias and the outcome of his disciplinary proceeding.

*Id.* at *16-17 (emphasis supplied).

The allegations in the Complaint concerning Syracuse's consistent deferential treatment toward female students, the disregard for exculpatory evidence, and the slanting of the entire process against Plaintiff, regardless of the evidence in his favor, are analogous to those found sufficient to show gender bias in *Prasad*. Thus, even removing the public pressure allegations from the equation (which, to be addressed *infra*, are also sufficient), Doe still adequately alleges gender bias to make out a claim for relief under Title IX. *See Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 136 (N.D.N.Y. 2018) (hereinafter, "*Syracuse I*") ("[S]ome allegations, such as statements reflecting bias by members of the tribunal, may suffice both to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias." (citing *Yusuf*, 35 F.3d at 715)).

16

### ii.    There is No Strict Contemporaneousness Requirement for Public Pressure Allegations.

The Second Circuit, in *Menaker v. Hofstra University*, 935 F.3d 20, expressly rejected the lower court's "overly narrow interpretations" of the Court's precedent in *Doe v. Columbia* concerning allegations of public pressure, holding that there is no specific quantum of criticism that is required to make a bias claim "plausible" under Rule 12 standards. *Menaker*, 935 F.3d at 32-34. Defendant Syracuse tries to apply a similarly flawed logic here, arguing that the pressure on the University must be virtually simultaneous with the Plaintiff's disciplinary proceedings in order to be relevant. Such a rule simply does not exist.

First, in *Menaker*, the complaint's allegations of public pressure concerned events that took place *over a year* before the plaintiff's termination. Similar to *Menaker*, and as Defendant acknowledges, Plaintiff alleges that Syracuse was subjected to a years-long investigation by OCR for purportedly failing to respond adequately to female students' reports of sexual misconduct, and that such investigation(s) threatened Syracuse's ability to receive federal funding. Doe also alleges that this investigation was still ongoing during the investigation and adjudication of Jane Roe's complaint against Plaintiff.

It is certainly reasonable to infer, as was the case in *Menaker*, that a school still under the scrutiny of an OCR investigation would not be eager to put itself back in such a vulnerable position by failing to respond to a claim of sexual misconduct by another female student at the same time. On a motion to dismiss under Rule 12(b)(6), all inferences must be resolved in plaintiff's favor. *Columbia*, 831 F.3d at 48. Applying that rule here, the Complaint sufficiently alleges that Syracuse may have been influenced by public and federal pressure to act on gender stereotypes when resolving Roe's claim against Plaintiff. *See Feibleman*, 2020 WL 882429 at *10, 14-15.

17

The cases relied upon by Syracuse to assert a strict contemporaneousness requirement do not bear this claim out.  For example, in *Doe v. New York Univ.*, 438 F. Supp. 3d 172 (S.D.N.Y. 2020), *appeal dismissed* (June 8, 2020), the entirety of the plaintiff's allegations concerning pressure on the school was a pair of social media posts by a single student, of which the plaintiff did not even allege NYU was aware.  *Id.* at 185-186. That is clearly distinguishable from the extensive public and known criticism of Syracuse alleged above, as indicated in the Complaint. Additionally, the student in the NYU case had actually been found *not responsible* by the school, and was not subjected to any sanctions; his lawsuit was based on the initial finding that was overturned by the school itself, mooting the entire case. Finally, the plaintiff in *Doe v. NYU* was offered the chance to amend his complaint and expressly declined. That case has no bearing on the instant matter. *Id.* at 179-180.

In sum, the Complaint contains dozens of specific, factual, well-pled allegations showing that Syracuse's disciplinary process resulted in an erroneous outcome, and that outcome was influenced by Plaintiff's gender. Syracuse's Motion regarding the Title IX erroneous outcome claim should be denied.

## III.   PLAINTIFF ADEQUATELY ALLEGES A TITLE IX SELECTIVE ENFORCEMENT CLAIM

A Plaintiff may bring a selective enforcement claim under Title IX when "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715.  Generally, this requires "sufficient facts to permit the plausible inference that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Rollins*, 352 F. Supp. 3d at 1211 (citation omitted).

In the instant case, Plaintiff sufficiently alleges that Syracuse's decision to initiate disciplinary proceedings based on allegations of sexual misconduct was motivated by gender. Specifically, Syracuse aggressively investigated Roe's claims of sexual misconduct against Plaintiff, but did not do the same with regard to Plaintiff's claims against Roe. Instead, Syracuse brushed Plaintiff's complaint completely to the side. Both Doe and Roe reported activity that, if true, could constitute sexual assault under Syracuse's Sexual Harassment, Abuse, and Assault Prevention Policy (the "Policy"). Roe's claims were pursued, while Syracuse treated Doe's as an afterthought. Roe and Doe were thus similarly situated students of different genders who were treated differently.

Courts across the country have upheld similar claims on a motion to dismiss. *See, e.g., Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 412–13 (D.R.I. 2018) ("Brown investigated Jane's complaint; it ignored John's complaint. While the two are not exactly identical, the allegations as pleaded present John and Jane as similarly situated."); *Rollins*, 352 F. Supp. 3d at 1211; *Doe v. Amherst Coll.*, 238 F.Supp.3d 195, 223 (D. Mass. 2017); *cf. Miami Univ.*, 882 F.3d at 596–97 (equal protection claim plausibly alleged where university pursued disciplinary action solely against male student despite evidence that both male and female student violated sexual misconduct policy).

Moreover, Defendant's contention that Roe is not similarly situated is incorrect. Jane Roe, who had filed a complaint against Plaintiff John Doe, was similarly situated because she was the subject of Plaintiff's counter-complaint; this is perhaps the most easily recognizable case of a female being similarly situated. *Doe v. Univ. of Sciences*, 961 F.3d 203, 210 (3d Cir. 2020); *Doe v. Miami*, 882 F.3d 579, 593-597 (6th Cir. 2018) (selective enforcement case upheld because decision to investigate and discipline the accused male plaintiff for sexual assault, but not the

female student, was possible evidence of gender bias); *Gischel v. Univ. of Cincinnati*, 2018 WL 9944971, at *1 (S.D. Ohio June 26, 2018) (selective enforcement case upheld because female accuser may be the similarly-situated person to whom the accused male plaintiff is compared).

Defendant claims that Jane Roe is not a proper comparator because John Doe alleges the contrasting treatment given to Roe's complaint and Doe's counter-complaint. However, this is simply not the case: *Doe v. Univ. of Sciences*, *Doe v. Miami*, and *Gischel v. Univ. of Cincinnati* establish Jane Roe is a proper comparator. Defendant misreads *Doe v. Haas* (427 F.Supp.3d 336, 357 (E.D.N.Y. 2019)), where the university initiated sexual misconduct proceedings against both the male and the female, and a *legitimate* hearing was held as to both; the difference in treatment of the male and the female flowed from the hearing evidence concerning their particular encounter. Here, however, Syracuse tossed Doe's claims against Roe by the wayside. Syracuse victim-shamed Doe by questioning him for even bringing a complaint forward, whereas the University pursued Roe's allegations seriously.

In addition, Plaintiff alleges, based upon the University survey responses and statistical information that is exclusively in Syracuse's possession, that Syracuse routinely punishes male respondents more severely than non-male respondents. Plaintiff supports this claim by noting that Syracuse provided "reasons" for the punishment that amounted to little more than a finding of non-consent, twisted Doe's story to make him seem incredible, and refused to substantively address his appeal. Assuming these claims to be true and drawing all inferences in favor of Plaintiff, as is required at this stage, these actions give rise to a plausible inference that "the severity of the penalty . . . was affected by the student's gender." *Yusuf*, 35 F.3d at 715. Plaintiff therefore alleges multiple grounds for a selective enforcement claim; Defendant's Motion should be denied.

**IV.** **PLAINTIFF ADEQUATELY ALLEGES BREACH OF CONTRACT**

The Complaint sets forth a claim for breach of contract against Syracuse. Plaintiff points out numerous, specific provisions of the Policy that Syracuse failed to abide by, resulting in Plaintiff being wrongly found responsible for sexual assault and expelled. Defendant Syracuse acknowledges that it had a contractual relationship with Doe, and that the Policy sets forth Syracuse's obligations to Plaintiff, but claims that (i) the terms identified by Plaintiff are insufficiently specific to merit enforcement, or (ii) Syracuse did not breach the terms. Although generally speaking, reliance solely on generic aspirational statements in a handbook does not ground a contract claim, Syracuse fails to appreciate that Plaintiff alleges *specific* provisions that were violated, and Syracuse's "no breach" claims are baseless. The motion to dismiss Plaintiff's contract claims should be denied.

New York courts have routinely held that the relationship between a student and a university is contractual in nature and the terms of the contract stem from, *inter alia*, the school's handbook and relevant policies. *See, e.g.*, *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("[A]n implied contract is formed when a university accepts a student for enrollment . . . . The terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student."); *see also Papaspiridakos v. Educ. Affiliates Inc.*, 2013 WL 4899136 at *3 (E.D.N.Y Sept. 11, 2013), *aff'd*, 580 Fed. Appx. 17 (2d Cir. 2014). Further, it is bedrock New York law that every contract carries an implied covenant of good faith and fair dealing. *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88 (1917).

As set forth in the Complaint, throughout the course of the disciplinary process, Syracuse breached, *inter alia*, the following specific and narrow Policy provisions:

(i)     "Parties and their advisors will have the opportunity to view the evidence gathered, to view the investigation report, and to submit a written response to each." Compl. ¶ 73.

21

(ii)    Students have the right to "participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard." Compl. ¶ 75.

(iii)   Students have the right to "have disclosures of Dating or Domestic Violence, Stalking, Sexual Assault, and other forms of Sexual Harassment treated seriously." Compl. ¶ 77.

(iv)    Students have the right to "be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed or should have acted in a different manner to avoid such crimes or violations." Compl. ¶ 79.

(v)     Students have the right to "access at least one level of appeal of a determination." Compl. ¶ 81.

These allegations are sufficient to ground a breach of contract claim. With respect to the right to view and respond to evidence, Syracuse claims that the University satisfied this Policy provision because Plaintiff did have the opportunity to submit a written response to the investigation report. However, Plaintiff is alleging that his "written response" was meaningless and effectively ignored. Indeed, while Doe submitted a response to the investigation report which identified numerous inconsistencies in Roe's story and requested that the Investigator ask Roe follow-up questions regarding these inconsistencies, the Investigator completely and unjustifiably ignored Plaintiff's request. On the other hand, Roe's response to the investigation report was carefully reviewed, and the investigator asked Plaintiff *all* of the follow-up questions that were requested by Roe. The University cannot skirt its contractual obligations by merely providing the appearance of an *opportunity* if that opportunity is meaningless.

Next, with regard to Plaintiff's allegation of a lack of an impartial process, Plaintiff's allegations in section II and III, *supra*, clearly delineate that the process that Syracuse imposed upon Plaintiff was far from fair and impartial. This is not a vague or ambiguous promise in the Policy. It is clear that the promise of a fair and impartial process includes the promise that the process will be conducted without gender bias. Further, with regard to Plaintiff's assertions that

Syracuse did not take his complaint seriously and the right to be free from blame, Plaintiff clearly alleges that Defendant treated his complaint against Roe vastly differently than Roe's complaint against him. At the hearing, the hearing officer questioned Plaintiff and Roe in completely different manners, and Plaintiff's statements and allegations were twisted to make him come across as not credible. Roe was questioned softly, and through a trauma-informed lens, while Doe was grilled with victim-shaming questions. Finally, with regard to Doe's right to an appeal, the University limited the length of Plaintiff's appeal as to make it impossible for Doe to adequately address all of the procedural shortcomings of the investigation. Again, the University cannot get around its promises by providing the mere appearance of opportunity if that opportunity is not meaningful. Compl. ¶¶ 72-82. *See, e.g., Doe v. Purdue Univ.,* 928 F.3d 652, 663 (7th Cir. 2019) ("To satisfy the Due Process Clause, 'a hearing must be a real one, not a sham or pretense.'").

Courts in this state have repeatedly found similar specific provisions to be enforceable via a contract claim. *See Papelino v. Albany Coll. of Pharmacy of Union Univ*., 633 F.3d 81, 94 (2d Cir. 2011); *Doe v. Syracuse Univ*., 440 F. Supp. 3d 158, 179 (N.D.N.Y. 2020) (hereinafter "*Syracuse II*") (Plaintiff adequately alleged that university failed to apply the preponderance of the evidence standard); *Doe v. Syracuse Univ*., Docket No. 18-CV-377, 2019 WL 2021026, at *10 (N.D.N.Y. May 8, 2019) (hereinafter, "*Syracuse III*") (denying motion to dismiss Plaintiff's breach of contract claim where Plaintiff alleged breach of specific provisions in university's student handbook); *Novio v. New York Acad. of Art*, 317 F. Supp. 3d 803, 813 (S.D.N.Y. 2018) (same); *Ansari v. New York Univ*., No. 96-CIV. 5280 (MBM), 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) (same); *Doe v. Sarah Lawrence Coll*., 453 F. Supp. 3d 653, 668 (S.D.N.Y. 2020) (same); *Doe v. Union College*, 1:19 CV-284 (GLS/CFH), 2020 WL 1063063, at *8 (N.D.N.Y. Mar. 5, 2020) (same).

Moreover, Syracuse's argument that Plaintiff cannot allege a stand-alone claim for violation of the covenant of good faith and fair dealing is irrelevant here: Plaintiff has not alleged a stand-alone good faith claim, but rather, incorporates it as part and parcel of his contract claim. In that regard, Doe's citation to Syracuse's numerous broken promises concerning fair, impartial, and unbiased processes, and Syracuse's breach of other specific provisions, and Syracuse's improper, gender-based motivation to skew the process against Plaintiff, *combined* with the specific violations discussed above, all roll into the argument that Syracuse violated the covenant of good faith. These allegations sufficiently ground a breach of contract claim. *See Papelino*, 633 F.3d at 94 (denying Defendant's motion for summary judgment on student's contract claim and explaining that "genuine issues exist for trial with respect to whether the College breached its implied duty of good faith by, *inter alia,* . . . mishandling the Honor Code proceedings . . . and denying (at least initially) Papelino…a diploma").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Syracuse's Motion to Dismiss the Complaint should be denied. To the extent this court is inclined to dismiss any claims, Plaintiff respectfully requests such dismissal should be without prejudice.

*[signature page to follow]*

**Dated:   New York, New York**
         **October 24, 2022**

                         **Respectfully submitted,**

                         **NESENOFF & MILTENBERG, LLP**
                         *Attorneys for Plaintiff John Doe*

                         **By: /s/** *Andrew T. Miltenberg, Esq.*
                         **Andrew T. Miltenberg, Esq.**
                         **Stuart Bernstein, Esq.**
                         **Tara J. Davis, Esq.**
                         **Nicholas Lewis, Esq.**
                         **Regina M. Federico, Esq. (*pro hac vice* forthcoming)**
                         **Kristen Mohr, Esq. (*pro hac vice* forthcoming)**
                         **363 Seventh Avenue, Fifth Floor**
                         **New York, New York 10001**
                         **(212) 736-4500**
                         **amiltenberg@nmllplaw.com**
                         **sbernstein@nmllplaw.com**
                         **tdavis@nmllplaw.com**
                         **nlewis@nmllplaw.com**
                         **rfederico@nmllplaw.com**
                         **kmohr@nmllplaw.com**